**Ronald D. WEAVER, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE and The Pennsylvania Department Of Corrections, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 9, 1996.

Decided Jan. 30, 1997.

Ronald D. Weaver, petitioner, for himself.

Robert A. Greevy, Assistant Chief Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

PELLEGRINI, Judge.

Presently before this Court are the preliminary objections filed by the Pennsylvania Board of Probation and Parole (Board) in response to a petition for writ of mandamus or other appropriate relief filed by Ronald D. Weaver (Weaver).[1]

Weaver was convicted of and sentenced for the offenses of rape and involuntary deviate sexual intercourse. On August 31, 1995, after the minimum expiration date for Weaver's convictions, the Board refused to parole Weaver. In its decision, the Board stated the following general reasons for its refusal:

Refuse. Assaultive instant offense. Very high assaultive behavior potential. Victim injury. Your need for treatment. Failure to participate in and benefit from a treatment program for sex offenders. Unfavorable recommendation from the Department of Corrections.

Review in May 1997.

You must participate in sex offender treatment, stress and anger management and prescriptive programming. You must maintain a clear conduct record. You must earn an institutional recommendation for parole.

On October 23, 1995, Weaver filed a petition[2] with this Court seeking to be released on parole, or alternatively, that the Board and the Department of Corrections (Department) be directed to appear before this

---

1. It should be noted that Weaver filed his petition against both the Department of Corrections and the Board. However, only the Board has filed preliminary objections to the petition.

2. In an order dated November 1, 1995, this Court directed that Weaver's "petition for writ of mandamus or other appropriate relief" be treated as a petition for review addressed to its original jurisdiction.

Court to show cause why it should not be required to release him on parole. In his petition, Weaver alleges that while the Department staff told him that he had an excellent prison record and would be eligible for parole, a unit manager at the prison where he was incarcerated told him that he would never be recommended for parole because he would not admit guilt, a requirement of the Institutional Sex Offender Program. Weaver further alleges that he was told by one Board member that he was being denied parole solely because he would not admit guilt in order to participate in the treatment program.

Based on these allegations, Weaver claims that his constitutional rights are being violated because:

● requiring an admission of guilt into the Institutional Sex Offender Program violates his Fifth Amendment right not to incriminate himself;

● his appeals from his criminal convictions are still pending and to require him to state that he committed the crime would be forcing him to commit perjury;[3]

● the Board discriminates against individuals convicted of sex-related crimes by requiring an admission of guilt when no such admission is required from prisoners with other types of convictions.[4]

Weaver also alleges that the Department and the Board have conspired to force him to incriminate himself, contrary to his Fifth Amendment privilege against self-incrimination.

**3.** Our Supreme Court has subsequently denied Weaver's appeal from his criminal conviction. *Commonwealth v. Weaver*, 543 Pa. 703, 670 A.2d 643 (1996).

**4.** In a single paragraph, Weaver also alleges that Huntington State Correctional Institution staff is retaliating against him for having brought a lawsuit against the Institution for alleged corruption and illegal activities, and that said retaliation is a violation of the Whistle Blower Law. Even though he does not address this issue in his brief and the issue is waived, because of the way that we resolve this case, it would not matter even if he had preserved the issue.

**5.** Even if we were to recognize a right to appeal a decision of the Board, we would be required to

The Board then filed the present preliminary objections to Weaver's petition. Citing to *Reider v. Pennsylvania Board of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), the Board has demurred to the petition, alleging that a decision to refuse or grant parole is not reviewable.[5] Additionally, the Board also objected to the relief sought by Weaver, arguing that since Weaver is requesting to be released from prison, he has effectively filed a writ of habeas corpus, an action that this Court is without jurisdiction to hear.[6]

### I.

### A.

The options for a prisoner seeking review of the Board's failure to grant parole are very limited due to the nature of parole itself. Akin to determinations regarding the level of incarceration that is needed for a particular prisoner, e.g., maximum-minimum security prison or a halfway house, parole is a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of the prison. *Rivenbark v. Board of Probation and Parole*, 509 Pa. 248, 501 A.2d 1110 (1985). A grant of parole does not eliminate a prisoner's sentence, but instead, the prisoner continues to serve his sentence during which time he or she is the subject of society's rehabilitation efforts under supervision. *Commonwealth v. Homoki*, 423 Pa. Superior Ct. 320, 621 A.2d 136 (1993), *petition for allowance of appeal denied*, 535 Pa. 675, 636 A.2d 634 (1993).

dismiss Weaver's appeal as being untimely filed. The Board's order denying parole was issued on August 31, 1995. However, the action was not filed in this Court until October 31, 1995. Appeals from agency decisions must be taken within 30 days of those decisions.

**6.** In ruling on a preliminary objection in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Stone and Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992). The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Jackson v. Garland*, 424 Pa. Superior Ct. 378, 622 A.2d 969 (1993).

The Board's decision to grant or deny parole is not a decision in the ordinary sense, because, when released, a parolee is continuing to serve his or her sentence. Parole is nothing more than a possibility, and, when granted, it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law abiding citizen in society. *Ughbanks v. Armstrong*, 208 U.S. 481, 28 S.Ct. 372, 52 L.Ed. 582 (1908); *Keastead v. Board of Probation and Parole*, 100 Pa.Cmwlth. 84, 514 A.2d 265 (1986). Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole. *Id.; see also Krantz v. Board of Probation and Parole*, 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). In other words, in Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his or her maximum term. *Tubbs v. Board of Probation and Parole*, 152 Pa.Cmwlth. 627, 620 A.2d 584 (1993), *petition for allowance of appeal denied*, 536 Pa. 635, 637 A.2d 295 (1993).

Because parole is a favor that lies solely within the Board's discretion, and because a prisoner lacks a liberty interest in being paroled, it has been consistently held that a prisoner has no right to appeal a decision of the Board denying a request for parole. *Reider v. Board of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986);[7] *King v. Board of Probation and Parole*, 111 Pa.Cmwlth. 392, 534 A.2d 150 (1987); *Tubbs; Lord v. Board of Probation and Parole*, 135 Pa.Cmwlth. 225, 580 A.2d 463 (1990), *petition for allowance of appeal denied*, 528 Pa. 619, 596 A.2d 801 (1991); *see also Commonwealth ex rel. Saltzburg v. Fulcomer*, 382 Pa. Superior Ct. 422, 555 A.2d 912 (1989). Recognizing that it is a "favor" or a "possibility," and that the denial of parole is not a decision of an agency in the ordinary sense, the General Assembly in the definitional section of the Administrative Agency Law[8] provides that the Board's denial of parole is not an adjudication subject to judicial review. *Reider* 514 A.2d at 970. As we observed in *Reider:*

> Under Pennsylvania law, a prisoner has no constitutionally protected liberty interest in the expectation of being released from confinement prior to the expiration of the maximum term of the imposed sentence. *Blair v. Pennsylvania Board of Probation and Parole*, 78 Pa.Commonwealth Ct. 41, 467 A.2d 71 (1983), cert. denied, 466 U.S. 977, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). The mere *possibility* of parole affords no constitutional rights to prisoners. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Moreover, a parole eligibility date, usually set at the expiration of the prisoner's minimum sentence, does not vest any right to a grant of parole upon reaching that date. See *Krantz v. Pennsylvania Board of Probation and Parole*, 86 Pa.Commonwealth Ct. 38, 483 A.2d 1044 (1984).... The General Assembly has granted the Board broad discretion in parole matters, *Commonwealth v. Vladyka*, 425 Pa. 603, 229 A.2d 920 (1967), and it is for the Board alone to determine whether or not the prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison. Because of the breadth of the Board's discretion, we believe that we cannot interfere with the discretion of the Board in granting parole.
>
> . . . .
>
> What the Board has decided, and why, being wholly a matter of the Board's discretion, is simply not subject to judicial review.

---

**7.** Because parole, by its nature, is a favor granted upon a prisoner, it does not create a constitutional right to appeal under Article 5, Section 9 of the Pennsylvania Constitution. *See Reider.*

**8.** Section 101 of the Law defines an "adjudication" as being:

> [a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. *The term does not include any order* based upon a proceeding before a court or which involves ... *paroles.*

2 Pa.C.S. § 101. (emphasis added).

*Reider,* at 971–72. At present then, both the statutory and decisional law of Pennsylvania precludes an appeal from the Board's grant or denial of parole.[9]

### B.

Recently, however, the Court of Appeals for the Third Circuit predicted that our Supreme Court would not approve of our holding in *Reider* (or, for that matter, follow the federal courts)[10] and would allow appeals from the denial of parole involving violations of certain types of constitutional rights. *Burkett v. Love,* 89 F.3d 135 (3d Cir.1996). This allowed the Third Circuit to sidestep a prisoner's habeas corpus petition under 28 U.S.C. § 2254 which it would have been required to hear if appeals were not allowed under *Reider,* thus controlling its docket.

█ In *Burkett,* a state prisoner had filed a habeas corpus petition in a federal court against the Commonwealth of Pennsylvania claiming that the Board unconstitutionally denied him parole in retaliation for his successful pursuit of prior federal habeas corpus proceedings. The Third Circuit, after observing that Burkett was required to exhaust all available state remedies prior to instituting a federal habeas corpus action, proceeded to examine whether Pennsylvania had any means by which Burkett could seek relief. It predicted that our Supreme Court would hold that *Reider* was not controlling in an appeal from a parole decision that violated a prisoner's constitutional rights. The Third Circuit stated that:

> [Such a] claim is not based on the abrogation of a liberty interest, and consequently, is not within the ambit of the reasoning underlying the decision in *Reider.* It is at least arguable, therefore, that [the] claim is not controlled by *Reider.* However, the application of that case to other instances of constitutional violations shows that the Commonwealth Court has given the holding a broad sweep.

Citing to *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied,* 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981), the Third Circuit then attempted to determine the position of our Supreme Court with respect to an appeal from a decision of the Board denying an application for parole that was based upon unconstitutional grounds. The Third Circuit reasoned that because our Supreme Court did not expressly limit the right to appeal a decision of the Board solely to instances of revocation of parole, *Reider* does not state the law of Pennsylvania, and this Court has jurisdiction to consider an appeal from a denial of parole. It then found that there are three possible state proceedings that a prisoner could pursue to challenge a denial of parole: (1) an appeal from a decision of the Board denying an application for parole on unconstitutional grounds; (2) a petition for writ of habeas corpus; and (3) an action in mandamus against the Board. After careful

---

**9.** Under the Act of August 6, 1941, P.L. 861, § 22, *as amended,* 61 P.S. § 331.22, a prisoner can apply for parole every six months after his or her minimum term has expired. Without the statutory limitation contained in Section 101 of the Law, a recognition of the right to appeal from a decision denying parole would allow a prisoner to file a new appeal every six months. The six month provision has recently been amended and increased to one year. Act of December 18, 1996, P.L. ——, No. 164, § 4.

**10.** The Sentencing Reform Act of 1984(Act), 18 U.S.C. §§ 3551–3586, abolished federal parole and created the concept of "supervised release" for offenses committed after November 7, 1987. Under the Act, parole is no longer an option for federal prisoners who committed a crime after the Act's effective date, and the Parole Commission, which is to be abolished under the Act, has

no authority to consider or issue parole to those prisoners. *See Fowler v. United States Parole Commission,* 94 F.3d 835 (3d Cir.1996). However, parole apparently still exists for those prisoners who committed a crime prior to November 7, 1987, because they have not been sentenced under the "supervised release" concept. In such cases, and contrary to the Third Circuit's conclusion that this Court must consider appeals from parole decisions when a constitutional violation has been alleged, *no such right to appeal exists at the federal level.* 18 U.S.C. § 4218(d) specifically provides that decisions concerning parole are insulated from judicial review. *Luther v. Molina,* 627 F.2d 71 (7th Cir.1980); *Shoults v. Fields,* 514 F.Supp. 900 (W.D.Wis.1981). Although, as stated by the Third Circuit, constitutional considerations make appellate review of parole decisions by the Board appropriate at the state level, apparently, those constitutional con-

consideration, we do not believe that the remedies suggested in *Burkett* are available to a prisoner who has been denied parole based upon an unconstitutional factor.[11]

siderations are not as significant at the federal level.

11. Courts of this Commonwealth are not required to follow federal courts on federal questions, let alone on questions involving state law. There is no hierarchical arrangement between state courts and federal courts that exercise jurisdiction within that state. Under the federal system, the states possess sovereignty concurrent with that of the federal government. *New York v. United States*, 505 U.S. 144, 163, 112 S.Ct. 2408, 2421–22, 120 L.Ed.2d 120 (1992). The Supreme Court stated in *Howlett v. Rose*, 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332 (1990):

Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are.... The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent."

(Quoting *Claflin v. Houseman*, 93 U.S. 130, 136–37, 23 L.Ed. 833 (1876)).

Accordingly, state courts share responsibility for the application and enforcement of federal law. *Howlett*, 496 U.S. at 372–73, 110 S.Ct. at 2440–41. Consistent with that concurrent jurisdiction, our Supreme Court has held that absent a pronouncement by the United States Supreme Court, decisions of the inferior federal courts are not binding upon Pennsylvania courts. *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, n. 1 (1996); *Breckline v. Metropolitan Life Insurance Co.*, 406 Pa. 573, 578, 178 A.2d 748, 751 (1962). Even where a federal question is involved, the state court is not required to follow a federal court and can determine whether or not the federal court decision is persuasive. *Breckline*. In *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 617, 182 A.2d 199, 203 (1962), *overruled in part by Specter v. Commonwealth*, 462 Pa. 474, 341 A.2d 481 (1975), the Supreme Court stated:

## II.

### A.

Initially, we point out that the Third Circuit's reliance upon *Bronson* is misplaced.

We, of course, are not bound by these decisions of the federal Courts, but in view of the vigor with which they are urged upon us by plaintiffs and as an expression of a view contrary to current Pennsylvania law, we desire to mention them and refute their reasoning.

Likewise, the Superior Court, in *Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross and Blue Shield*, 447 Pa. Superior Ct. 436, 445, 669 A.2d 975, 979–80 (1995), recently stated:

We note that the decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved.... Although the decisions of the federal courts lower than the United States Supreme Court are not binding on Pennsylvania courts, they do have a persuasive authority with regard to federal questions. (Citations omitted).

*See also Lilley v. Johns–Manville Corporation*, 408 Pa. Superior Ct. 83, 596 A.2d 203 (1991), *petition for allowance of appeal denied*, 530 Pa. 644, 607 A.2d 254 (1992). This court has also consistently followed that rule:

We note that although the interpretation of a federal statute is involved, this Court is not bound by decisions of federal district courts. *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). Only U.S. Supreme Court decisions, where relevant, are binding upon this court. *Id.*

*Department of Environmental Resources v. City of Harrisburg*, 133 Pa.Cmwlth. 577, 578 A.2d 563, 566 (1990). *See also Hall v. Southeastern Pennsylvania Transportation Authority*, 141 Pa. Cmwlth. 591, 596 A.2d 1153, 1155 n. 2 (1991); *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission*, 140 Pa.Cmwlth. 270, 592 A.2d 797, 803 n. 9 (1991). Federal courts are in accord. *See Freeman v. Lane*, 962 F.2d 1252, 1258 (7th Cir.1992), *quoting United States ex. rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir.1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971) ("In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy, for both sets of courts are governed by the same reviewing authority of the Supreme Court.") *See also Bromley v. Crisp*, 561 F.2d 1351 (10th Cir.1977), *certiorari denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978) (unless guided by a binding decision by the United States Supreme Court, the Oklahoma state courts may express their differing views on federal questions); *Owsley v. Peyton*, 352 F.2d 804 (4th. Cir.1965) (where the court noted that although state courts are free to follow the decisions of the Court of Appeals whose circuit includes their state for policy reasons, they are not obliged to do so).

*Bronson* specifically involved the right to appeal from a parole revocation and not, as here, the right to appeal from a denial of parole in the first instance. It is well-established, however, that the revocation of parole automatically gives rise to the revocation of a liberty interest, thus raising constitutional considerations warranting appellate review. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). On the other hand, constitutional issues arise in the context of a denial of parole only if the applicable parole statute provides a prisoner with the expectation of release. *Id.* No such expectation is created by Pennsylvania's parole statute, and therefore, there is no liberty interest affected by the Board's decision to deny parole. *King v. Board of Probation and Parole,* 111 Pa.Cmwlth. 392, 534 A.2d 150 (1987). Because *Bronson* dealt with the protection of a liberty interest, and because no liberty interest is involved here, our Supreme Court's decision in *Bronson* is not predictive of how it would review *Reider* or dispose of the present non-liberty interest case.

### B.

Next, we observe a crucial distinction between the types of claims addressed in *Burkett* and the claim presently before us. The unconstitutional considerations contemplated by the Third Circuit in *Burkett* are factors that are wholly extraneous to the decision of whether or not to grant parole; i.e., retaliation for bringing a lawsuit, race, religion, and national origin. *Burkett*-type constitutional claims relate to matters that are non-legitimate and non-bona fide reasons for denying parole because they have no relation to the parole process. They may also concern personal, as opposed to institutional, animus on the part of the Board members or correction officials. They do not deal with a facially relevant factor—such as Weaver's failure to admit to committing a crime, thus precluding effective treatment—that directly relates to the determination of whether a prisoner is suitable for parole and whether he or she poses a danger to society. Consequently, the

Third Circuit's analysis in *Burkett* is not relevant to the present case.

### III.

### A.

Even if this were a *Burkett*-type case, and ignoring the fact that we have no appellate jurisdiction under 42 Pa.C.S. § 763 to entertain these matters, the Third Circuit's analysis is flawed because an appeal from a non-bona fide reason for denying parole neither provides the prisoner with a fair tribunal to hear his or her case, nor allows this Court to adequately conduct judicial review. For example, if the Board refuses a prisoner's request for parole because of his or her race, the prisoner would not know of the Board's prejudice until after he or she has been denied parole. As such, there would be no way for the prisoner to raise the issue of prejudice at the administrative proceedings. Because this Court may only consider matters initially raised before and considered by the Board, there would be no way for a parolee in a *Burkett*-type situation to properly preserve the issue for appellate review. Pa. R.A.P. 1551; *Kelly v. Workmen's Compensation Appeal Board (Pepsi Bottling Co. of Philadelphia),* 166 Pa.Cmwlth. 618, 647 A.2d 275 (1994), *petition for allowance of appeal denied,* 539 Pa. 693, 653 A.2d 1231 (1994).

Additionally, in ruling on an appeal from an agency, we must do so based upon the record certified by that agency. 2 Pa.C.S. § 704. On appeal, not only is this Court precluded from reweighing the evidence presented before the agency, it cannot consider new evidence, and instead, must rely upon the evidence contained in the record certified by the agency. Given this narrow evidentiary review, therefore, it would be practically impossible for this Court to consider a prisoner's constitutional claim. Only if the Board were to shed all caution and state an unconstitutional or discriminatory reason for denying parole on the record, an improbable action on the part of the Board, would this

Court be able to rule on a constitutional challenge to the denial of parole.[12]

The only possible way that we may consider a *Burkett*-type challenge would be for this Court to remand the matter to the Board for the creation of an evidentiary record on the discrimination issue. However, aside from being contrary to accepted appellate practice, a remand which is for the purpose of an entirely new proceeding raises the troubling question of what kind of remedy could be afforded to the prisoner. By remanding the matter to the Board, this Court would be asking the initial tribunal to reconsider its own decision. It is highly unlikely that a parolee can successfully convince the Board that its own members have "evil hearts" and engaged in discriminatory treatment. Despite the Third Circuit's prediction that an appeal is possible under state law, such a prediction is not only ·contrary to standard appellate practice, but it also denies the parolee the constitutional guarantee to have one's claim heard by a fair and impartial tribunal. At least in *Burkett*-type situations, where the parolee is contending that the Board's reason for denying parole was non-bona fide, there is and can be no possible way for anyone to appeal a decision of the Board to this Court.

### B.

■ When a bona fide reason for denying parole such as the one at issue in the present case, i.e., the failure to complete a treatment program, is stated in the Board's decision, not only are the difficulties discussed above inapplicable to the same extent, but a *Burkett*-type situation does not exist. Nevertheless, even if the concerns addressed in *Burkett* did apply to a facially bona fide reason for denying parole, an appeal from the Board's decision would not be available because courts of this Commonwealth, like federal courts,[13] are without jurisdiction to hear such appeals from the respective boards, even when a constitutional claim is made. *Reider, supra.*[14] Where, as here, a prisoner places a constitutional patina on his or her challenge, we still do not obtain jurisdiction to hear the appeal because, at the core of any such appeal are the principles that a prisoner has a right to parole and can challenge the Board's exercise of its discretion regarding those factors that it considers to be relevant to the determination of whether a prisoner is no longer a danger to society.

Even if we had jurisdiction, because the prisoner is not challenging the Board's decision that he or she remains a danger to society because of a failure to complete a treatment program, but rather, is challenging the correction officials' operation of a treatment program that allegedly infringes upon his or her constitutional rights, an appeal would not lie. For example, if a prisoner challenges a parole board's denial of parole because he or she failed to undergo a 12–step rehabilitation program offered by the corrections facility that was permeated with

12. If the prisoner is contending that the Board discriminates based upon race, and the only indication of such discrimination is the repeated practice and procedure of the Board, then that evidence would not appear in the record pertaining only to the prisoner's parole.

13. Federal courts review federal parole cases just as they do state parole challenges, via a petition for a writ of habeas corpus. *Zannino v. Arnold,* 531 F.2d 687 (3d Cir.1976). In doing so, their inquiry is limited to examining the reasons for denying parole given by the Parole Commission and determining whether there is a rational basis in the record for the Commission's conclusions. *Id.* Declining to second-guess the Commission, if the reasons given by the Commission are sufficient to justify its actions, federal courts will not consider any other "real" reasons advanced by the prisoner. *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982); *Hodges v. O'Brien,* 589 F.Supp.

1225 (D.Kan.1984); *Baker v. Day,* 436 F.Supp. 593 (W.D.Okla.1977).

14. We realize that in *Bronson, supra,* our Supreme Court allowed for an appeal from a decision regarding parole in apparent contradiction to the administrative agency law's exclusion of parole decisions from the definition of adjudications subject to appellate review. 491 Pa. 549, 421 A.2d 1021 (1980). The right to have an appeal from a revocation of parole was created by the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the Court found a liberty interest that must be protected but did not specify the procedures that must be used to protect that interest. To protect a parolee's liberty interest in parole revocation proceedings, our Supreme Court held that the Board was constitutionally required to hear the matter. No such liberty interest is involved here.

references to God, thus violative of his or her First Amendment rights, the prisoner would not be challenging the parole board's conclusion that he or she was not rehabilitated and should not be granted parole. Instead, the prisoner's challenge, if successful, would force the prison officials to offer other rehabilitation programs without constitutional infirmities.[15] An appeal of the parole board's decision would be useless because the board has no power to order the prison officials to implement a new program or to change the existing program. Nor does the prisoner have a claim to parole because he or she admittedly has not taken steps to lessen the danger that he or she poses to society.

▇▇▇ A similar situation exists here. Weaver is not appealing the Board's decision on the grounds that it erred in determining that he was no longer a danger to society. Rather, Weaver is contending that the prison's rape treatment program, which requires him to admit to committing the rape for which he was convicted, violates his Fifth Amendment rights. Even if Weaver had filed an appeal of the Board's decision rather than filing the present petition in our original jurisdiction, he would not be challenging and, in fact, could not challenge the Board's requirement that he receive treatment and be "cured" prior to being released on parole.

That is a legitimate requirement imposed by the Board to ensure that a prisoner is suitable for parole. Instead, Weaver would be challenging the Department's administration of the treatment program, including the conduct required by the participation in that program. As in Kerr, the proper vehicle to raise that challenge would be via a cause of action against the Department raising the constitutionality of the treatment program and not via an appeal from a decision of the Board denying parole.

▇▇▇ To decide otherwise and to take appeals whenever there is some constitutional challenge to the Board's decision would convert run-of-the-mill parole denial cases that otherwise could not be appealed into frivolous and unfounded constitutional cases so that an appeal can be taken: "I was denied parole because I kept calling guards obscene names, and that violates my First Amendment rights"; "I was denied parole because I engaged in sex with many inmates, violating my right to privacy"; "I was denied parole because they found drugs in my cell in violation of my Fourth Amendment rights"; "keeping me in prison is cruel and unusual punishment."[16] Unlike the Third Circuit, we believe that our Supreme Court will not overrule Reider because prisoners have no right to parole in the first instance.[17]

---

15. In Kerr v. Farrey, 95 F.3d 472 (7th Cir.1996), a prisoner brought a Section 1983 action against prison officials challenging the constitutionality of its narcotics treatment program, Narcotics Anonymous, on the basis that it violated his First Amendment rights. In that case, the institution, as part of its rehabilitation program, required inmates with chemical dependence problems to attend Narcotics Anonymous meetings, and if they failed to do so, they were given a higher security risk classification and suffered negative effects on parole eligibility. Kerr challenged the institution's requirement on the basis that the Narcotics Anonymous meetings were permeated with references to God, thus violating the Establishment Clause. While the Seventh Circuit agreed, it did not parole the prisoner, but remanded the matter back to the district court for the implementation of an alternative program.

16. While this portion of the opinion discussing the appeal process is part of the overview of the reviewability of the Board's decision, it was adopted by this Court in Eldridge v. Board of Probation and Parole, 688 A.2d 273 (1997).

17. We also disagree with the Third Circuit's conclusion that a prisoner can challenge a decision of the Board denying parole by filing a petition for a writ of habeas corpus. A habeas corpus proceeding challenges only the legality of a sentence or the conditions of a prisoner's confinement. See Pa. R.Crim. P. 1701; Clark v. State of Georgia Pardons and Paroles Board, 915 F.2d 636 (11th Cir.1990). Habeas corpus is not available to a prisoner contending that the Board erred in denying him or her parole, irrespective of the factual underpinnings of the prisoner's contentions. Commonwealth v. Ashe, 348 Pa. 409, 35 A.2d 340 (1944); Gillespie v. Department of Corrections, 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987), petition for allowance of appeal denied, 518 Pa. 614, 540 A.2d 535 (1988). Here, Weaver is not challenging the state's right to confine him or the length of his confinement. Rather, he is challenging only the constitutionality of the Board's procedures and the factors considered by the Board in denying him parole. Such a challenge cannot properly be raised in a habeas corpus proceeding.

## IV.

Weaver's petition for writ of mandamus contends that he is entitled to be paroled because the Board and the Department violated his Fifth Amendment right not to incriminate himself and discriminated against individuals convicted of sex-related crimes. Mandamus is an extraordinary remedy that is designed to *compel the performance of a ministerial or mandatory duty* on the part of a governmental body, but will not lie to compel a discretionary act on the part of the governmental body. *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980); *Green v. Tioga County Board of Commissioners,* 661 A.2d 932 (Pa. Cmwlth.1995). To obtain relief, a plaintiff must prove that he or she has a clear legal right in the relief requested, that there is a corresponding duty on the part of the governmental body to grant that relief, and that there is no other adequate and appropriate remedy at law. *Id.*

While mandamus may not normally be available for actions that involve an agency's exercise of discretion, it may lie where the agency's action is based upon a mistaken view of the law that it has discretion to act when it actually does not. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977). For example, in *Coleman v. Board of Education,* 477 Pa. 414, 383 A.2d 1275 (1978), our Supreme Court upheld a grant of mandamus ordering the reinstatement of a terminated employee of a school district after determining that the district had made a mistake in law by not following the discharge procedures set forth in the School Code. Because the school board had a mandated duty to follow the statutory procedures, a new hearing was ordered but the school board was not told how to exercise its discretion on the discharge issue.

Likewise, in *County of Allegheny,* our Supreme Court upheld a grant of mandamus directing the Department of Corrections to accept and confine all persons committed to its custody pursuant to 42 Pa.C.S. § 9762(1) and (2). In so doing, the Court observed that the Department committed an error of law in concluding that it had the discretion to accept those prisoners where Section 9762 imposed a ministerial and mandatory duty upon the Department to assume custody of those prisoners. *See County of Allegheny v. Commonwealth,* 518 Pa. 556, 544 A.2d 1305 (1988); *see also Marshall v. Board of Probation and Parole,* 162 Pa.Cmwlth. 256, 638 A.2d 451 (1994) (holding that mandamus lies to compel the Board to consider an application for parole, a mandatory duty under the Parole Act, where the Board had refused to consider an application that had not received an institutional recommendation); *Donnell v. Board of Probation and Parole,* 61 Pa. Cmwlth. 517, 434 A.2d 846 (1981) (mandamus will lie against the Board where it did not comply with the procedural requirements of its own regulations). In other words, mandamus is an appropriate avenue to compel a governmental body to perform a discretionary act where its duty to perform that act is mandated by the law, and the body has refused to perform the act based upon an erroneous interpretation of the law.[18]

Weaver has alleged that by requiring him to participate in the Institutional Sex Offenders Program, which, in turn, required him to admit to committing the crime for which he was committed, the Board violated his Fifth Amendment right against self-incrimination and retaliated against him for exercising that right, and that he should be released on parole. Assuming that Weaver's failure to successfully complete the rape treatment program was the only reason that he was denied parole,[19] and that there were

---

18. In *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977), this Court did recognize that prison officials do have a duty not to interfere with those constitutional rights that prisoners possess. Although the cause of action in *Lindsley* was a mandamus, the nature of the relief sought by the petitioners was an injunction prohibiting prison officials from infringing on constitutional rights. Further-

more, this Court declined to rule upon whether the petitioners had an adequate remedy under 42 U.S.C. § 1983, saving the disposition of that issue for a later point in the proceedings.

19. This fact is not apparent from the face of the Board's decision denying parole. Instead, Weaver alleges that an individual board member told him that the sole reason he was denied parole

no other reasons given by the Board,[20] Weaver's request for relief—to be paroled—cannot be granted because mandamus does not lie to compel a body vested with discretion to exercise that discretion in a certain manner or to arrive at a particular result. *Taylor v. Abernathy,* 422 Pa. 629, 222 A.2d 863 (1966); *Bronson v. Board of Probation and Parole,* 491 Pa. 549, 421 A.2d 1021 (1980); *see also Wilder v. Department of Corrections,* 673 A.2d 30 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 545 Pa. 673, 681 A.2d 1344 (1996) (holding that mandamus is not available if a prisoner does not have a constitutionally protected liberty interest in the relief sought). The only relief that Weaver can obtain through mandamus is for the proper procedures be followed and the proper law be applied by the Board in ruling on his application for parole.

■■■ Even for that limited purpose, mandamus would only be issued if Weaver could show that the Board's refusal to grant parole, as evident solely in its decision,[21] was, as matter of law, based upon an erroneous

conclusion that it had the discretion to deny parole for the reason given. Mandamus is based upon a duty by an agency to follow a law and is available only when, under a correct interpretation of that law, the agency has an absolute ministerial duty—no choice— to act in a certain way. Mandamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense.[22] If that was the nature of mandamus, there would be no difference between it and an appeal from the agency's decision or other forms of actions to address those concerns.

## V.

■■■ As to Weaver's contention that the Board discriminates against individuals convicted of sex-related offenses, we first observe that the Department of Corrections, not the Board, operates the program imposing the admission of guilt requirement. Moreover, Weaver has not set forth a violation of any right under the Fifth Amend-

was because he did not successfully complete the treatment program. A statement of one member of the Board, who is not acting as a part of a majority of the Board, cannot be attributed to the entire Board. *See Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995).

20. Here, however, the Board gave several reasons for denying parole. Even if we were to agree with Weaver's contention regarding the requirement that he complete the rape treatment program, he nevertheless would not clearly be entitled to the relief requested, i.e., release on parole, because of those reasons.

21. For a violation of a constitutional right not discerned from the language of the Board's decision, a claim under the federal cause of action set forth in Section 1983 would exist. 42 U.S.C. § 1983. Numerous federal courts have recognized that the right to sue afforded to an individual under Section 1983 extends to state prisoners who have been denied parole in violation of their federal constitutional rights. For example, in *Cain v. Lane,* 857 F.2d 1139 (7th Cir.1988), the Court of Appeals for the Seventh Circuit recognized a cause of action under Section 1983 for a prisoner who alleged that he was disciplined and denied parole in retaliation for engaging in constitutionally protected speech. Similarly, a prisoner who alleges that he was denied parole because of his race or nationality may bring a

Section 1983 action against the officials on a parole board to enjoin them from considering his race or nationality in subsequent parole determinations. *Candelaria v. Griffin,* 641 F.2d 868 (10th Cir.1981); *Osborne v. Folmar,* 735 F.2d 1316 (11th Cir.1984). Moreover, the right to institute a Section 1983 action against state officials for the violation of equal protection in denying a parole application extends to instances where those officials allegedly denied an individual parole simply because he or she had instituted prior lawsuits against the officials or the penal institution. *Clark v. State of Georgia Pardons and Paroles Board,* 915 F.2d 636 (11th Cir.1990). Furthermore, at least one court has recognized a Section 1983 claim filed by a prisoner against prison officials challenging the constitutionality of a 12-step rehabilitation program where participation and success in that program required the prisoner to adhere to numerous principles making reference to God. *Kerr v. Farrey,* 95 F.3d 472 (7th Cir.1996). While some of Weaver's allegations may be cognizable under Section 1983, because he has sued only the Board and the Department, such an action will not lie. *See Will v. Michigan,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also: Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (state officials can be sued for injunctive relief when acting in their official capacity.)

22. See footnotes 11 & 16.

ment's privilege against self-incrimination.[23] Just because one has a constitutional right does not mean that no adverse consequences can flow from exercising such a right. "[T]he privilege [of self-incrimination] does not extend to consequences of a noncriminal nature such as threats of liability in a civil suit, disgrace in the community or loss of employment." *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). That principle is true, even if it would result in the loss of that person's probation. For example, in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409, *rehearing den'd*, 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984), the Supreme Court of the United States held that a probationer may not claim the self-incrimination privilege for not answering a question that could result in the loss of his probation. Similarly, in *City of Philadelphia v. Kenny*, 28 Pa.Cmwlth. 531, 369 A.2d 1343 (1977), *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977), this Court held that in a civil proceeding to collect past due wage taxes plus interest and penalties, the taxpayers' assertion of their Fifth Amendment rights against self-incrimination, because to admit to the allegations could result in the filing of criminal charges, could constitutionally be considered an admission to the allegations of the complaint. *See also Realmuto v. Department of Transportation*, 161 Pa.Cmwlth. 613, 637 A.2d 769 (1994) (holding that it is not a violation of constitutional rights to make an adverse inference from a refusal to respond under the Fifth Amendment to a relevant question in a civil proceeding); *Sawko v. Sawko*, 425 Pa. Superior Ct. 450, 625 A.2d 692 (1993).

Even the exercise of the privilege in a criminal situation does not guarantee that there can be no adverse consequences arising therefrom. *In United States v. Henry*, 883 F.2d 1010 (11th Cir.1989), a claim was made that Section 3E1.1 of the Federal Sentencing Guidelines violates the Fifth Amendment privilege against self-incrimination where the

defendant has testified to his innocence at trial and, if convicted, he must accept responsibility for what he has done, in effect, confessing to perjury [or confessing to an act that he did not commit], to receive a lower sentence. Rejecting that contention, the Ninth Circuit stated that the Guidelines:

> may well affect how criminal defendants choose to exercise their constitutional rights. But "not every burden on the exercise of a constitutional right and not every encouragement to waive such a right is invalid." *Corbitt v. New Jersey*, 439 U.S. 212, 219, 99 S.Ct. 492, 493–497, 58 L.Ed.2d 466 (1978). Persons involved in the criminal law process are faced with a variety of choices. Some of the alternatives may lead to unpleasant consequences. For example, to choose to go to trial may result in greater punishment. To take the stand as a witness in one's case opens the door to possible perjury charges as well as possibly strengthening the prosecution's case. Section 3E1.1 may add to the dilemmas facing criminal defendants, but no good reason exists to believe that Section 3E1.1 was intended to punish anyone for exercising rights. We are unprepared to equate the possibility of leniency with impermissible punishment. (Footnotes admitted).

*See also United States v. Gonzalez*, 897 F.2d 1018 (9th Cir.1990); *United States v. McConaghy*, 23 F.3d 351 (11th Cir.1994).

■ Just as Weaver is free to exercise his First Amendment right not to participate in the treatment program at all, he is also free to assert his Fifth Amendment right against self-incrimination and refuse to admit to committing the rape for which he was convicted in the context of completing a treatment program. He is not, however, immunized from all adverse consequences, if any, arising from that refusal, such as here, not being permitted to participate in a program that considers an admission to be a pre-condition to successful treatment that will lessen the chances that he will rape

**23.** We note that Weaver alleges neither that the Board's requirement of his participation in a treatment program is not a bona fide basis for denying parole, nor that the Department's requirement that he admit to committing the rape

for which he was convicted is not reasonable or rationally related to ensuring effective treatment. He is only contending that requiring such an admission violates his right against self-incrimination.

again.[24] Because there is no constitutional prohibition against using Weaver's refusal to admit that he committed the rape for which he was convicted as a basis for denying participation in a treatment program, and because a failure to successfully complete that program is a valid reason for denying parole, Weaver has failed to set forth a cause of action in mandamus.

Accordingly, the Board is dismissed from this matter.

SMITH, J., dissents.

## ORDER

AND NOW, this *30th* day of *January*, 1997, upon careful consideration of the preliminary objections filed by Respondent Pennsylvania Board of Probation and Parole, said preliminary objections are sustained, the Pennsylvania Board of Probation and Parole is dismissed from this case.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Because I believe that Ronald D. Weaver's (Weaver) mandamus petition states a cause of action which is properly before this court, I would overrule the Pennsylvania Board of Probation and Parole's (Board) preliminary objection in the nature of a demurrer.[1]

In reaching a contrary result, the majority: (1) violates the rule of law governing preliminary objections, which requires this court to accept all well pled allegations as true and which prohibits this court from considering factual matters not disclosed in the record, *Hawks by Hawks v. Livermore*, 157 Pa. Cmwlth. 243, 629 A.2d 270 (1993); 2 Goodrich–Amram 2d § 1017(b):29; (2) ignores the rule of law permitting a mandamus petition to compel a discretionary act where the prior exercise of discretion was arbitrary, *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985); *Commonwealth ex rel. Lindsley v. Robinson*, 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977); *see also* Standard Pennsylvania Practice 2d, § 99:6 (1983) ("[I]f discretion is arbitrarily exercised, mandamus will lie."); (3) fails to recognize fully the Board's mandatory duty "not to interfere with the exercise of [the constitutional] rights" of prisoners, *Lindsley*, 372 A.2d at 1261; and (4) ignores the rule of law providing that, unless there is an error of law or resulting prejudice to an adverse party, the right to amend a pleading should be liberally granted at any stage of the proceedings. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996).[2]

## I. Preliminary Objections

In addressing a preliminary objection in the nature of a demurrer, this court must determine whether, on the facts alleged, the law states *with certainty* that no recovery is possible. We must accept as true all well pled allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom, and *any doubt* should be resolved in favor of overruling the

---

24. We do not reach the issue of whether admitting that he is a rapist would be compelled testimony because it is a requirement for obtaining institutional recommendation for parole and could not be used against him in a subsequent criminal proceeding. *But see Allen v. Illinois*, 478 U.S. 364, 367–68, 106 S.Ct. 2988, 2991–92, 92 L.Ed.2d 296 (1986); *United States v. Phelps*, 955 F.2d 1258, 1268 n. 6 (9th Cir.1992), *cert. denied*, 504 U.S. 989, 112 S.Ct. 2977, 119 L.Ed.2d 595 (1992).

1. I agree with the majority that this court is not bound by *Burkett v. Love*, 89 F.3d 135 (3d Cir. 1996). Thus, the majority's failure to follow *Burkett* is not the basis for my dissent.

Nevertheless, I point out that *Burkett* is relevant here only with respect to its assertion that, under *Reider v. Pennsylvania Board of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), mandamus is available to compel the

Board to correct a mistake in applying the law. While the majority eventually addresses the propriety of an original jurisdiction mandamus action in this case, the majority's discussion of a prisoner's right to *appeal* the denial of parole, which encompasses Parts I–III of the decision and which is presumably a response to *Burkett*, is unnecessary and constitutes mere dicta.

2. In *Werner*, the petitioner argued that this court should have granted leave to amend a mandamus petition to correct the defects. Our supreme court held that, because the petitioner failed to request leave to amend and because case law does not *require* this court to grant leave to amend *sua sponte*, his argument must fail. Although this court is not *required* to grant leave to amend *sua sponte*, I believe that we should do so here, where constitutional rights are at issue.

demurrer.[3] *Hawks by Hawks.* Moreover, "[i]n ruling on a demurrer, a court may not consider factual matters not disclosed in the record.... Only such matters as arise out of a pleading itself may be considered, and the decision must be on the pleading alone." 2 Goodrich–Amram 2d § 1017(b):29.

Weaver's petition contains the following allegations. Weaver was sentenced to a minimum term of ten years and, at sentencing, the court stated that he would be eligible for parole at the expiration of the minimum sentence. (Weaver's petition, paras. 2–3.) However, when Weaver became eligible for parole, Department of Corrections (Department) staff told Weaver that, although he had an excellent prison record and was low risk, Weaver would *never* be recommended for parole because he would not admit guilt in order to be eligible to participate in the Institutional Sex Offender Program. (Weaver's petition, paras. 4–6.) Weaver informed the Department's staff that his criminal conviction was on appeal, and that the Department could not force him to commit perjury by stating that he committed a crime that he did not commit. (Weaver's petition, para. 7.)

Subsequently, at a parole hearing, a Board member told Weaver that parole was denied *solely* because Weaver would not admit guilt in order to be eligible for the sex offender program.[4] Weaver informed the Board member that his criminal conviction was on appeal, and that the Board could not force

him to commit perjury by stating that he committed a crime that he did not commit. (Weaver's petition, paras. 10–11.)

Weaver avers that the Department and the Board have conspired to force him to be a witness against himself in violation of his constitutional right against self-incrimination and, because of politics and the fear of losing their jobs, have invidiously discriminated against him as a convicted sex offender and have rendered their decisions in an arbitrary and capricious manner. (Weaver's petition, paras. 14–16.) Weaver further alleges that the Board rendered its decision in retaliation for the exercise of his constitutional right and because of political pressure, ignoring the criteria for parole set forth in the Parole Act.[5] (Weaver's petition, paras. 18–22, 24.) Finally, Weaver challenges the Board's other grounds for denial of parole. (Weaver's petition, paras. 26–27, 37, 39.)

Accepting as true all of Weaver's well pled allegations and assuming no facts outside the pleading, I believe that Weaver has stated a cause of action in his petition. Indeed, at this preliminary objection stage, I cannot say as a matter of law that he is not entitled to relief. Unfortunately, in reaching its result, the majority fails to accept Weaver's well pled allegations as true and assumes factual matters which are not in the record before us.

**3.** If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *County of Allegheny.*

**4.** The majority states that, under *Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995), a statement of one member of the Board cannot be attributed to the entire Board. (Majority op. at 777, n. 19.) However, unlike this case, *Kuzel* involved post-trial motions, not preliminary objections, and, thus, is not applicable here.

Indeed, in *Kuzel,* after a jury determined that only one township commissioner was guilty of wrongful conduct, we held that one commissioner cannot be held liable for the termination of an employee by the entire board. Unlike Weaver, the employee in *Kuzel* had an opportunity to prove to a jury that the entire board was guilty of wrongful conduct. Although the employee in *Kuzel* failed to do so, Weaver should have the

same opportunity here to prove his allegation that the Board denied his application for parole *solely* because he asserted his right against self-incrimination.

**5.** Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §§ 331.1–331.34. Section 19 of the Parole Act states that the Board must consider the following in deciding whether to grant parole:

> [I]n granting paroles the board shall consider the nature and character of the offense committed, any recommendation made by the judge, the general character and history of the prisoner and the written or personal statement or testimony of the victim or the victim's family....
>
> The board shall, in all cases, consider the recommendations of the trial judge and the district attorney and of each warden or superintendent ... who has had charge of an applicant.

61 P.S. § 331.19.

The majority states that admitting guilt is a precondition to the successful treatment of sex offenders and, therefore, failure to admit guilt is a valid reason for denying parole. (Majority op. at 773, 774, 775, 778.) However, in this statement, the majority addresses, as relevant, an argument which Weaver has not made. To the contrary, Weaver's petition alleges that the Board's denial of parole for that reason was arbitrary and capricious,[6] that it was based on politics, retaliation and a conspiracy to force him to admit guilt and thereby perjure himself while his criminal conviction was on appeal. (Weaver's petition, paras. 13, 19, 25.) By law, we *must* accept this as true; we cannot, as the majority has done here, create an extraneous fact to discredit the allegations in Weaver's petition.

## II. Mandamus

Mandamus is an extraordinary writ of common law, designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant and want of any other adequate and appropriate remedy.[7] *Bronson v. Pennsylvania Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981). Where the action sought to be compelled is discretionary, mandamus will not lie to compel that discretionary act *except* where such exercise is arbitrary, fraudulent or based upon a mistaken view of the law. *County of Allegheny; Lindsley*.

Thus, because mandamus is a proper cause of action in cases where the exercise of discretion was arbitrary, and because Weaver alleges here that the Board acted in an arbitrary manner, Weaver's mandamus action is quite proper here. Because the majority *nowhere* addresses this averment or the applicable rule of law, I believe that the majority's analysis is deficient and, therefore, cannot support the dismissal of Weaver's action against the Board.

6. The majority states that Weaver does not allege that requiring his participation in a treatment program is not a bona fide basis for denying parole, or that requiring him to admit guilt is not reasonably or rationally related to ensuring effective treatment. (Majority op. at 778, n. 23.)

However, Weaver alleges more than once that the decision of the Board based on his refusal to admit guilt was arbitrary and capricious. (Weaver's petition, paras. 13, 19, 25.) If the decision was arbitrary and capricious, then it was *not*, by definition, reasonable or rationally related to ensuring effective treatment. Indeed, an arbitrary decision is one without reason; a capricious decision is one based on whim. Webster's New Collegiate Dictionary 57, 163 (1981). Thus, the majority fails to recognize the plain meaning of the words contained in Weaver's allegations.

7. I point out that Weaver has filed a mandamus petition here, *not* an appeal. Nevertheless, the majority has expended much energy to defend our holding in *Reider*, where this court held that a prisoner has no right to appeal the denial of parole. In light of the majority's extensive discussion of *Reider*, I offer the following view in opposition. Indeed, for the reasons which follow, I believe that *Reider* is flawed and should be overruled.

We based our holding in *Reider* on an analysis of the statutory right to appeal from an "adjudication" of a Commonwealth agency. We noted that the statutory definition of "adjudication" excludes *any order which involves parole*. 2 Pa.

C.S. § 101. Then, we immediately recognized the difficulty with this definition of "adjudication." Indeed, we *rejected* it in acknowledging the right of a prisoner to appeal a parole *revocation*, an order which obviously "involves parole." We noted that, unlike the denial of parole, the revocation of parole involves a constitutionally protected liberty interest. In effect, then, we held that, notwithstanding the statutory definition of "adjudication," a prisoner may appeal a decision which denies the prisoner a constitutionally protected liberty interest.

The Third Circuit Court of Appeals has stated that "all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir.1980). On this federal constitutional question, it is appropriate for us to defer to the circuit court. *Jay R. Reynolds, Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, 661 A.2d 494 (Pa.Cmwlth. 1995). Thus, I believe that the statutory definition of "adjudication" also does not apply where the denial of parole was arbitrary or based on constitutionally impermissible reasons.

Finally, I believe that the statutory definition violates Article V, Section 9 of the Pennsylvania Constitution, which provides that "there shall ... be a right of appeal ... from an administrative agency to a court of record or to an appellate court...." *See Reider* (Barry, J., dissenting); *see also Commonwealth v. Vartan*, 674 A.2d 1156 (Pa.Cmwlth.1996).

## III. Mandatory Duty

### A. Constitutional Mandates

The U.S. Supreme Court has stated that judicial discretion is a legal discretion, *not* a personal discretion, and it *must* be exercised in conformity to the constitution and the laws of the land. *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). In other words, the Board here does *not* have discretion to violate the U.S. Constitution or the Pennsylvania Constitution; quite the contrary, the Board has a *mandatory duty* to exercise its discretion in compliance with them.

The majority, citing *Lindsley,* acknowledges that government officials may not interfere with the constitutional rights which prisoners possess. (Majority op. at 776, n. 18.) In fact, I find *Lindsley* to be directly on point. In *Lindsley,* as in this case, we considered preliminary objections in the nature of a demurrer to a prisoner's mandamus petition which alleged that the Board denied parole based on the unconstitutional acts of the Department.[8] Because *Lindsley* involved a mandamus petition, this court specifically addressed the prisoner's clearly defined rights and the officials' corresponding duties.[9] We held that public officials have a mandatory duty not to interfere with the exercise of a prisoner's constitutional rights.[10]

### 1. Equal Protection

The Board has a mandatory duty to comply with the Equal Protection Clause of the U.S. Constitution and Article I, Section 26 of the Pennsylvania Constitution. Weaver alleges that the Board has invidiously discriminated against him because other criminals do not have to admit guilt to be considered for parole.

Equal protection analysis requires strict scrutiny of a classification when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Because the Board in this case subjects to disparate treatment convicted sex offenders who exercise their Fifth Amendment privilege, the classification here interferes with the exercise of an individual's fundamental right against self-incrimination. Thus, the matter deserves strict scrutiny. Absent any evidence that the Board's requirement is necessary to protect a compelling state interest, this court must overrule the demurrer.

The majority refuses to recognize Weaver's discrimination claim because the Department, not the Board, operates the sex offender program which requires Weaver to admit guilt. (Majority op. at 777.) However, the Board, not the Department, denied Weaver parole because Weaver would not admit guilt and participate in the Department's sex offender program. Moreover, in denying parole, the Board relied on the Department's negative recommendation. Thus, to the extent that the *Board* based its parole decision on the Department's unconstitutional actions, the Board has interfered with Weaver's constitutional rights.

### 2. Fifth Amendment

The Board also has a mandatory duty to comply with the Fifth Amendment to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution. Weaver al-

---

**8.** The mandamus petition in *Lindsley* alleged: (1) deliberate and systematic harassment for petitioner's activities as a "jailhouse lawyer;" (2) imposition of disciplinary misconducts without due process; (3) denial of parole based on those misconducts; and (4) harassment because of petitioner's adherence to the dictates of his religion.

**9.** The majority appears to distinguish *Lindsley* from this case because, "[a]lthough the cause of action in *Lindsley* was a mandamus, the nature of the relief sought by the petitioners was an injunction prohibiting prison officials from infringing on constitutional rights." (Majority op. at 776.) I find no merit in this attempt to distinguish *Lindsley.*

**10.** Our superior court has also recognized that the Board has a *mandatory duty* to comply with the constitution. In *Moore v. Roth,* 231 Pa. Superior Ct. 464, 331 A.2d 509 (1974), a prisoner alleged that the Board violated his constitutional right to confront his accusers. Our superior court held that mandamus lies to compel the Board to take appropriate corrective action.

leges that the Board deprived him of his constitutional right not to incriminate himself.[11] The majority states that Weaver exercised his right against *self-incrimination* here and must suffer the adverse consequences. (Majority op. at 777.) In other words, the majority suggests that there was no actual deprivation of a fundamental right here. However, in ruling on a demurrer, where there must be *certainty* that the law will not allow recovery, I cannot say that the requirement to admit guilt does not, in some way, deprive Weaver of his right against self-incrimination.

Indeed, one of the purposes of the Fifth Amendment privilege is to prevent the state from overcoming the mind and will of the individual. *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Here, Weaver alleges that the state is "conspiring to *force* [him] to be a witness against himself." (Weaver's petition, para. 14.) (Emphasis added.) Moreover, in *Miranda v. Arizona,* 384 U.S. 436, 459–60, 86 S.Ct. 1602, 1619–20, 16 L.Ed.2d 694 (1966) (citations omitted) (emphasis added), the U.S. Supreme Court stated:

> Those who framed our Constitution and the Bill of Rights were ever aware of *subtle encroachments on individual liberty.* They knew that "illegitimate and unconstitutional practices get their first footing ... by *silent approaches and slight deviations from legal modes of procedure.*" ... The privilege [against self-incrimination] was elevated to constitutional status and has always been *"as broad as the mischief against which it seeks to guard."* ... We cannot depart from this noble heritage.

I believe that requiring Weaver to incriminate himself in order to be considered for parole is a subtle encroachment on his funda-

mental right, and we must guard against such mischief.

### 3. Excessive Penalty

The Board has a mandatory duty to comply with the requirements of the Eighth Amendment of the U.S. Constitution and Article I, Section 13 of the Pennsylvania Constitution. Weaver's petition indicates that the sentencing judge intended him to be eligible for parole after the expiration of his minimum sentence. Weaver thereby suggests that requiring convicted sex offenders to admit guilt in order to be eligible for parole modifies the original sentence imposed by the sentencing judge and, in fact, creates an illegal sentence and an excessive penalty.

Section 9756(c) of the Sentencing Code, 42 Pa.C.S. § 9756(c)(emphasis added), provides as follows:

> (c) Prohibition of parole.-Except in the case of murder of the first degree, *the court may impose a sentence of imprisonment without the right to parole only when:*
>
> (1) a summary offense is charged;
>
> (2) sentence is imposed for nonpayment of fines or costs, or both, in which case the sentence shall specify the number of days to be served; and
>
> (3) the maximum term or terms of imprisonment imposed on one or more indictments to run consecutively or concurrently total less than 30 days.

Quite clearly, in this case, the trial court *could not* impose a sentence of imprisonment which denied Weaver the *right* to parole. Likewise, the Board cannot impose a requirement on Weaver which, in effect, alters the sentencing judge's sentence such that Weaver must serve a term of imprisonment *without the right to parole.*[12] I believe that such

---

**11.** "The language of the Fifth Amendment is unequivocal and without exception. And the scope of the privilege is comprehensive.... The privilege can be claimed in *any proceeding.* ... [I]t protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution." *Application of Gault,* 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967).

Weaver asserted his innocence during the trial and continues to do so now. (Weaver's petition,

paras. 7–8.) Moreover, Weaver alleges that his criminal conviction is on appeal, and that, were he to admit guilt in order to meet eligibility criteria for acceptance into the sex offender program, he would be forced to commit perjury. Thus, Weaver has properly asserted his Fifth Amendment privilege here.

**12.** Under Pennsylvania law, the sentence imposed for a criminal offense is the maximum term; the minimum term sets the date prior to

constitutes an excessive penalty for the particular crime.

Years ago, the legislature of this Commonwealth enacted the Barr–Walker Act, Act of January 8, 1952, P.L. (1951) 1851, formerly 19 P.S. §§ 1166–1174. Under the Barr–Walker Act, certain convicted sex offenders could receive an indeterminate prison term of one day to life, subject to the discretion of the parole board.[13] In *Commonwealth v. Dooley*, 209 Pa. Superior Ct. 519, 232 A.2d 45 (1967), our superior court declared the Barr–Walker Act unconstitutional because; under *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the act imposed a magnified sentence without providing a full panoply of constitutional due process protections.[14]

. As the legislature did with the Barr–Walker Act, the Board has imposed upon Weaver a *magnified sentence,* imprisonment for the maximum term without the right to parole. As with the Barr–Walker Act, I do not believe that the Board can magnify Weaver's criminal sentence simply because he is a convicted sex offender who has asserted his Fifth Amendment privilege against self-incrimination.

### 4.  Due Process

The Board has a mandatory duty to comply with the Fourteenth Amendment of the U.S. Constitution and Article I, Section 11 of the Pennsylvania Constitution. Weaver alleges that the decision of the Board was arbitrary and capricious, a violation of Weaver's constitutional right to *substantive* due process.

Weaver has a liberty interest flowing from the due process clause in having the Board consider his application for parole without violating his constitutional rights. *Block.* Because Weaver alleges that the Board failed to perform its mandatory duty to protect his constitutional right to *substantive* due process, Weaver has stated a cause of action in mandamus.

Indeed, in *Block,* 631 F.2d at 235–36 (emphasis added) (citations omitted), the Third Circuit Court of Appeals stated:

> In *Greenholtz* [*v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979),] the [U.S. Supreme Court] held that there is no liberty interest in parole release … to which *procedural* due process protections attach. This holding, however, does not stand for the proposition that once a state decides to provide that which it is not constitutionally compelled to offer, there are no constitutional limitations whatsoever on the basis for making decisions under the program. …. To interpret Greenholtz as so holding would be to ascribe to that opinion the intent to initiate a major upheaval in due process jurisprudence. The case, however, does not contravene the time-honored principle that *"the touchstone of due process is protection of the*

---

which a prisoner may not be paroled. Thus, the significance of the minimum term is that it establishes a parole eligibility date. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa. Cmwlth. 38, 483 A.2d 1044 (1984). Requiring convicted sex offenders to admit guilt, in effect, eliminates the minimum term of sentence and requires the prisoner to serve the maximum term without the right to parole.

13. The Barr–Walker Act provided that if a court is of the opinion that a person who has been convicted before it of indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape, would, if at large, constitute a threat of bodily harm to members of the public, or is an habitual offender and mentally ill, it may, *in lieu of the sentence provided by law,* sentence such person to a state institution for an indeterminate term, from one day to life. After a

person was sentenced under the Barr–Walker Act, exclusive control over that person rested with the parole board. *U.S. ex rel. Gerchman v. Maroney,* 355 F.2d 302 (3d Cir.1966).

14. Prior to *Dooley,* the Third Circuit Court of Appeals held that the Barr–Walker Act was unconstitutional, stating:

> The effort of enlightened penology to alleviate the condition of a convicted defendant by providing some elements of advanced, modern methods of cure and rehabilitation and possible ultimate release on parole cannot be turned about so as to deprive a defendant of the procedures which the due process clause guarantees in a criminal proceeding.

*Gerchman,* 355 F.2d at 310. Thus, here, the sex offender program is an "effort of enlightened penology" and a "modern [method] of cure and rehabilitation" which deprives convicted sex offenders of their constitutional rights.

*individual against arbitrary action of government."....*

[A]lthough "nothing in the Constitution requires a State to provide for probation or parole ... when a State adopts a parole system that applies general standards of eligibility, prisoners justifiably expect that parole will be granted *fairly and according to law* whenever those standards are met.

*The presence of a large measure of discretion in a parole system ... does not alter the fundamental due process limitation against capricious decisionmaking.* A legislative grant of discretion does not amount to a license for arbitrary behavior. .... [A] state statute may not sanction totally arbitrary parole decisions founded on impermissible criteria. *Under the Supremacy Clause, a state statute may not vitiate the fundamental due process right to be free from arbitrary governmental action.....* Thus, ... courts can review the *substance* of parole decisions, as distinguished from the adequacy of the procedures, to determine whether a parole board exercised its authority arbitrarily.

Quite clearly, then, Weaver has stated a *substantive* due process claim which would be recognized by the Third Circuit Court of Appeals.

The majority, however, fails to address whether Weaver's allegation of arbitrary and capricious decisionmaking states a federal *substantive* due process claim cognizable *in this court.*[15] Indeed, this court has never addressed whether it will recognize such a federal claim in a mandamus action, and, until we do, the law does not state with *certainty* that no recovery is possible on the matter.

## B. Statutory Mandates

The majority concedes that mandamus lies to compel the performance of a mandatory duty under statutory law. (Majority op. at 776.) However, the majority either ignores or rejects the following mandatory duties, imposed upon the Board by Pennsylvania statutes, which are particularly relevant to Weaver's mandamus petition.

First, as noted above, a court may not impose a sentence of "imprisonment without the right to parole" except for cases of first degree murder or for cases involving minor offenses. 42 Pa.C.S. § 9756(c). Thus, in Pennsylvania, sex offenders *must* receive a minimum term to establish a parole eligibility date. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). The Board, in the exercise of its power to parole, may not consider improper factors which, in effect, eliminate this statutorily required minimum sentence and require the prisoner to serve the maximum term without the right to parole.

Second, by statute, the Board may parole a prisoner after the expiration of the minimum term when "the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby." Section 21 of the Parole Act, 61 P.S. § 331.21. Without any evidence that admitting guilt is in the best interests of the convict and without any evidence that failure to admit guilt will injure the interests of the Commonwealth, I fail to see how the Board could properly perform this mandatory duty.

Third, the factors which the Board may consider in making a parole decision are prescribed by statute.[16] *See* Section 19 of the Parole Act. If the Board considers im-

15. Of course, this court is not bound by the Third Circuit's decision in *Block.* However, I am persuaded by the reasoning in *Block* that the Board cannot render a decision denying parole for arbitrary, capricious and constitutionally impermissible reasons.

16. Weaver alleges that the Board ignored the provisions of the Parole Act in rendering its decision, and that the Board based its decision on politics. With respect to the latter, Justice Brennan wrote in *Furman v. Georgia,* 408 U.S. 238, 268, 92 S.Ct. 2726, 2741, 33 L.Ed.2d 346

(1972) (J. Brennan concurring) (brackets in original), quoting *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 638, 63 S.Ct. 1178, 1185–86, 87 L.Ed. 1628 (1943), that:

the Bill of Rights ... "may not be submitted to vote; [it] depend[s] on the outcome of no elections." "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials...."

proper factors, then the Board has failed to perform its mandatory duty under the law. Thus, I fail to see how the majority can conclude that mandamus does not lie where a prisoner alleges that the Board considered improper factors. (Majority op. at 777.)

### IV. Leave to Amend

The majority acknowledges that mandamus is proper where an agency's action is based on a mistaken view that the law gives the agency discretion to act when, in fact, the law mandates a particular action or procedure. (Majority op. at 776.) Thus, here, mandamus is proper because, as Weaver alleges, the Board's action is based on its mistaken view that, in the exercise of its discretion, the Board may violate Weaver's constitutional right against self-incrimination.

The majority then notes that, under this rule of law, the only relief that Weaver can obtain through mandamus is an order directing the Board to follow appropriate procedures and to properly apply the law in ruling on his application for parole. (Majority op. at 777.) I agree. If Weaver prevails on his mandamus petition, this court may issue an order to compel the Board to exercise its discretion without violating Weaver's constitutional rights.[17]

However, unlike the majority, I would not dismiss Weaver's mandamus petition simply because Weaver improperly asks this court to order his release on parole. Unless there is an error of law or resulting prejudice to an adverse party, the right to amend a pleading should be liberally granted at any stage of the proceedings. *Werner.* Because I find no error of law or prejudice to the adverse parties here, I would grant Weaver leave of court to amend his petition pursuant to Rules 1028(e) and 1033 of the Pennsylvania Rules of Civil Procedure.

### V. Conclusion

Because we are dealing with a demurrer here and because I believe that Weaver's mandamus petition is properly before this court, I would overrule the Board's preliminary objection and grant Weaver leave to amend his petition for review to request appropriate relief.[18]

SMITH, J., concurs with this dissenting opinion insofar as it would grant leave to amend.

---

**17.** Thus, I agree with the majority that mandamus does not lie to compel a body vested with discretion to exercise that discretion in a certain manner or to arrive at a particular result. (Majority op. at 777.)

**18.** Like the majority, I do not believe that Weaver has an appropriate remedy under section 1983 because Weaver has sued only the Board and the Department. (Majority op. at 776–777, n. 18.) However, I point out that, under section 1983, Weaver may sue the Department's staff and the Board's members in their personal capacities. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In that suit, Weaver could request that the court declare the admission of guilt requirement unconstitutional and that the court permanently enjoin the state officials from continuing to consider the failure to admit guilt, or the failure to complete a program requiring the admission of guilt, in determining whether to recommend a prisoner for parole or whether to deny parole to a prisoner. *Ex Parte Young; Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

Because the statute of limitations for a section 1983 action in Pennsylvania is two years, Weaver has until August 30, 1997 to file such an action in this court or in federal court. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Knoll v. Springfield Township School District,* 763 F.2d 584 (3d Cir.1985); 42 Pa.C.S. § 5524(2).