# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Martin Jennings, II, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 522 M.D. 2015 |
| | : | Submitted: June 17, 2016 |
| Pennsylvania Department of | : | |
| Corrections, Pennsylvania Board of | : | |
| Probation and Parole, | : | |
| Respondents | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED:  November 30, 2016**


Before this Court in our original jurisdiction are the preliminary objections (POs) of the Pennsylvania Department of Corrections (Department) and the Pennsylvania Board of Probation and Parole (Board) (together, Respondents) to Joseph Martin Jennings, II's (Jennings) "Amended Complaint," which we shall consider as a Petition for Review in the Nature of a Request for a Writ of Mandamus (Petition).[1]  Upon review, we sustain the Department's single PO and the Board's second PO, and dismiss the Petition.

---

[1] Rule 1502 of the Pennsylvania Rules of Appellate Procedure provides:

*(Continued…)*

# I.   BACKGROUND

Jennings is currently incarcerated at the State Correctional Institution (SCI) Benner Township on unknown charges.  (Petition ¶ 1.)   Jennings was first incarcerated in 2001 after pleading *nolo contendere* to Criminal Conspiracy in violation of Section 903 of the Crimes Code, 18 Pa. C.S. § 903, and Delivery/Possession with the Intent to Deliver a Controlled Substance in violation of Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act.[2]  (Id. ¶ 4, Ex. G.)  Jennings was sentenced to 15 to 30 months incarceration and was assigned Inmate Number EN1581 by the Department.  (Id. ¶ 5.)  Jennings was granted parole on January 2, 2002, to serve the balance of his sentence at liberty.  (Id. ¶ 6.)  Jennings was arrested while at liberty on parole and charged with Corruption of Minors in violation of Section 6301 of the Crimes Code, 18 Pa. C.S. § 6301.  (Id. ¶ 10.)  The Board took no action in light of the arrest because the conduct underlying the alleged offense occurred prior to Jennings' incarceration.  However, while on bail for the above charge, Jennings violated the conditions of his parole by traveling to California.  (Id. ¶ 7.)   He was extradited to the Commonwealth on the Board's warrant and incarcerated at SCI-Rockview on January 30, 2003, pending Board action on the parole violation.  (Id. ¶ 7-8.)  On

---

> The appeal and the original jurisdiction actions of equity, replevin, *mandamus* and quo warranto, the action for a declaratory judgment, and the writs of certiorari and prohibition *are abolished* insofar as they relate to matters within the scope of a petition for review under this chapter.  *The petition for review, insofar as applicable under this chapter, shall be the exclusive procedure for judicial review of a determination of a government unit.*

Pa. R.A.P. 1502 (emphasis added).

[2] Act of April 14, 1972, P.L. 233, as amended, 35 P.S. § 780-113(a)(30).

April 21, 2003, the Board ordered Jennings to be recommitted to a SCI as a technical parole violator to serve eight months back time. (Id. ¶ 9, Ex. A.)

While at SCI-Rockview, on March 6, 2003, Jennings was arrested and charged with various sexual offenses. (Id. ¶ 15.) The Petition does not state when the offense(s) occurred; however, review of Jennings' criminal docket number listed in Jennings's Petition shows that the event for which he was charged occurred on April 13, 2002, when Jennings was on parole. See Criminal Docket No. CP-41-CR-0000342-2003 at 3; Commonwealth v. Jennings, 958 A.2d 536, 537 (Pa. Super. 2008).[3]

Jennings was convicted, upon a *nolo contendere* plea, to Corruption of Minors on September 26, 2003, and sentenced to 12 months to 5 years, followed by 1 year of probation. (Petition ¶ 14, Ex. G.) This sentence was to be served under Jennings' original Inmate Number, EN1581. (Id. ¶ 17.) Four months later, on January 26, 2004, Jennings was found guilty of Sexual and Indecent Assault in violation of Sections 3124.1 and 3126 of the Crimes Code, 18 Pa. C.S. §§ 3124.1, 3126, respectively. (Id. ¶ 16, Ex. G.) Jennings received a sentence of 5 to 10 years of incarceration for the Sexual Assault conviction and a consecutive sentence of 1 to 2 years of incarceration for the Indecent Assault conviction. (Id. ¶ 18.) These concurrent sentences were to run consecutive to Jennings' 1 to 5 years sentence for Corruption of Minors, combining for an aggregate sentence of 7 to 17 years of incarceration, and resulting in a minimum date of October 14, 2009, and a maximum date of October 14, 2019. (Id. ¶ 18, Ex. G.)

---

[3] This Court, when assessing preliminary objections in its original jurisdiction, may take judicial notice of relevant dates in a criminal matter. Doxsey v. Commonwealth, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996).

Jennings was assigned a new inmate number upon his return to state custody on January 29, 2004. (Id. ¶ 17.) The new number, FR0460, was associated with the Sexual Assault and Indecent Assault convictions. (Id.) Then, on February 17, 2005, the Board recommitted Jennings as a convicted parole violator and deemed him not eligible for parole for 18 months, to run concurrent with the eight month term resulting from his recommitment as a technical parole violator for traveling to California. (Id. ¶ 20.) At some point after returning to state custody, the Department developed a plan of programming for Jennings that included several sexual offender treatment programs. (Id. ¶ 21.) As of January 5, 2006, the Department recommended that Jennings complete: (1) Alcohol and Other Drug Education; (2) various sexual offender programs; (3) the Thinking for a Change program; and (4) violence prevention programming. (Id., Ex. E.)

On May 22, 2006, the Board denied Jennings parole from his Corruption of Minors sentence for the following reasons:

> Your refusal to accept responsibility for the offense(s) committed.
> The negative recommendation made by the Department of
> Corrections.
> Your unacceptable compliance with prescribed institutional programs.
> Your need to participate in and complete additional institutional
> programs.
> Your interview with the hearing examiner.

(Petition Ex. C.) The Board notified Jennings that if interviewed in the future for parole, the Board will consider, *inter alia*, whether he successfully completed a treatment program for sex offenders and his prescriptive program plan. (Id.)

Jennings took advantage of the inmate grievance system and filed at least one grievance alleging that he was assigned an incorrect inmate number upon his return to the state system on January 29, 2004. (Id. ¶ 25.) In response, the

4

Department reassigned Jennings to his initial inmate number, EN1581, but still required Jennings to participate in a prescriptive plan for sexual offenders. (Id. ¶¶ 25, 27.) At the request of Jennings' attorney, the sentencing judge for Jennings' criminal cases discussed above, the Honorable Nancy Butts, sent the Board a letter on July 3, 2007, indicating that, at least as it pertained to the docket number associated with his Corruption of Minors conviction, Jennings was "neither charged with, nor convicted of any sex related offenses." (Id., Ex. B.) A copy of the letter was sent to Jennings' counselor at SCI-Houtzdale, the SCI at which he was housed at this time. (Id.)

Jennings filed a Grievance on August 24, 2009, requesting that his records be corrected and that he be given credit for the time he has been incarcerated. (Id. ¶ 30, Ex. F.) The Department's Grievance Officer denied the request, concluding:

> [Your Grievance] appears to center around your belief that the Sex Offender Program (SOP) should never have been added to your Correctional Plan under your new number because you should have been reentered under your old number. Regardless of what number you were serving under and when, both your current offense and your prior offense are SOP related. You received a Parole Board action on 2/11/05 which stipulated that you complete SOP treatment. Each year an Annual Review is conducted on each inmate. At that time, the counselor is required to review your case and has the authority to change your Correctional Plan. The addition of the SOP program to your Correctional Plan was warranted based on your previous and current offenses. Your refusal to participate in that programming is the reason you have not been supported for parole. Therefore, you are the only one who can be blamed for the "three extra years" you feel have been added to your minimum release date.
>
> Since there are no legitimate time credit issues in your case, your request for your minimum to be readjusted is denied. Your grievance is denied.

(Id., Ex. F.)

5

On September 6, 2012, the Board granted Jennings parole under Inmate Number FR0460. (Id. ¶ 24, Ex. D.) The record does not reveal why Jennings is currently serving a term of incarceration at SCI-Benner Township.

Jennings alleges that despite acknowledging that he was classified under a wrong number, the Department refused to correct its error and did not remove the sexual offender program from his prescriptive program while he served his sentence under Inmate Number EN1581, related to his Corruption of Minor conviction. (Id. ¶ 27.) He further alleges that because he should not have been required to complete the sexual offender program while serving the Corruption of Minors sentence, he should have been granted parole from that sentence on October 13, 2003, resulting in a minimum date for his Sexual Assault and Indecent Assault convictions of October 14, 2009. (Id. ¶ 29.) Jennings seeks a writ of mandamus ordering the Department to "correct his program[m]ing requirements which would make him eligible for parole consideration in 2006 and to properly calculate his credit for incarceration and maximum sentences." (Id., Count I Wherefore Clause.) Jennings also seeks a writ of mandamus ordering the Board to "correct his records and . . . to properly calculate his credit for incarceration and maximum sentences." (Id., Count 2 Wherefore Clause.)

## II. RESPONDENTS' POs

Respondents separately filed POs to the Petition. The Department's single PO is in the nature of a demurrer, and alleges that mandamus will not lie because Jennings has not established a clear right to relief. (Department's POs ¶ 19.) The Department alleges that developing a prescriptive plan is an act of discretion, and there is nothing that precludes the Department from considering the entirety of an

6

inmate's criminal file when developing a prescriptive plan. (Id. ¶¶ 21-22.) The Department points to information within Jennings' criminal files that justifies its decision to require Jennings to undergo sex offender treatment. Specifically, the Department notes that the Probable Cause statement in Jennings' files shows that the conduct underlying his Corruption of Minors charge was sexually related notwithstanding the fact that he pled *nolo contendere* to a charge that did not include a sexual component. (Id. ¶¶ 24-25.)

The Board filed two POs, also in the nature of a demurrer. First, the Board demurs to the Petition by viewing the Petition as an appeal of its decision to deny Jennings parole on May 22, 2006. (Board's POs ¶¶ 8-13.) The Board alleges that the decision to deny parole is not an adjudication and cannot be appealed. (Id. ¶ 12.) Next, the Board alleges that Jennings has not stated a claim for mandamus relief in our original jurisdiction because Jennings, like all other inmates, has no clear right to parole. Mandamus, according to the Board's POs, can be obtained in a parole case only to direct the Board to follow the proper procedures and law when deciding whether to grant or refuse parole. (Id. ¶ 19.) Furthermore, the Board alleges that Jennings has not stated a claim because he has not alleged that the Board has a clear duty. (Id. ¶ 34.) According to the Board, the Petition does not adequately state a claim because Jennings has not pleaded that he ever filed a parole application for the Board's consideration between 2006 and 2012. (Id. ¶ 33.) Without an application, the Board alleges, it has no duty to consider parole. (Id. ¶ 34.) Both the Department and the Board request that the Petition be dismissed.

## III. DISCUSSION

This Court has explained our standard of review in considering preliminary objections to an application for a writ of mandamus as follows.

> Mandamus is an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the petitioner, a corresponding duty in the respondent, and want of any other adequate and appropriate remedy. Mandamus is not available to establish legal rights, but is appropriate only to enforce rights that have been established. In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. Preliminary objections will be sustained only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.

Wilson v. Pennsylvania Bd. of Prob. & Parole, 942 A.2d 270, 272 (Pa. Cmwlth. 2008) (citations omitted).

Jennings' allegations focus on the Department's decision to prescribe sexual offender treatment and the Board's subsequent denial of parole on the basis that Jennings did not complete such treatment. We shall address both issues in turn.

### A. Prescribed Programming

Jennings argues that the Department has a duty to assess the needs of each inmate to determine appropriate counseling needs and services and that he has a right to be correctly categorized. He alleges that his Corruption of Minors conviction did not include a sexual element and, therefore, the Department breached its duty to him by prescribing sexual offender treatment while he was serving his sentence for that conviction. Jennings alleges, and the Department

8

concedes, that he was incorrectly assigned a new inmate identification number when he returned to state custody on January 29, 2004. (Petition ¶ 17, Ex. F.) Jennings argues that if not for the incorrect assignment, he would not have been prescribed sexual offender treatment at that time and could have received parole from his Corruption of Minors sentence.

Section 102 of the Prisons and Parole Code defines "prescribed programming" as "[a]n individualized treatment plan that is part of the correctional plan jointly developed by the department and the board following a diagnostic evaluation and risk and needs assessment that includes a structured set of evidence-based treatment curriculums designed to reduce the risk of reoffense by an offender." 61 Pa. C.S. § 102. One form of prescribed programming is the sexual offender treatment program. Section 9718.1(b) of the Sentencing Code, 42 Pa. C.S. § 9718.1(b), requires all persons convicted of certain enumerated offenses and adjudicated a sexually violent predator under Section 9799.12 of the Sentencing Code, 42 Pa. C.S. § 9799.12, to participate in the sexual offender treatment program as a condition for parole. Corruption of Minors is listed as an offense requiring sexual offender treatment, but only "if the offense involved sexual contact with the victim." 42 Pa. C.S. § 9718.1(a)(3).

As Judge Butts stated in her letter, Jennings' *conviction* for Corruption of Minors did not include a sexual element. However, neither Section 9718.1 of the Sentencing Code, nor any other provision of law, provides that *only* those convicted of such crimes can be prescribed sexual offender treatment. See Saunders v. Dep't of Corr. (Pa. Cmwlth., No. 524 M.D. 2015, filed June 30, 2016), slip op. at 15-16 (stating that "a 'sexually violent predator' designation under Section 9799.12 of the Sentencing Code or a conviction for one of the

9

enumerated offenses in Section 9718.1 is not a precondition to the Department's assessment of whether an inmate needs to participate in the [sexual offender treatment program] and part of the inmate's [prescriptive plan]").[4] In circumstances where the offender was not adjudicated a sexually violent predator under Section 9799.12 of the Sentencing Code, 42 Pa. C.S. § 9799.12, and convicted of the crimes enumerated in Section 9718.1(a), the Department and the Board may still, within its discretion, prescribe sexual offender treatment based on "a diagnostic evaluation and risk and needs assessment." 61 Pa. C.S. § 102.

This discretion is essential in light of the "unique nature and requirements of the prison setting," Small v. Horn, 722 A.2d 664, 669 (Pa. 1998), and the Department's "duty . . . to protect prisoners from violence at the hands of other prisoners," Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted). The Department's purpose is not only to provide protection to the outside community by housing dangerous inmates, but also to provide "a safe and humane environment" for inmates. Section 91.2 of the Department's Regulations, 37 Pa. Code § 91.2. It is well-known that sexual assault is prevalent in the prison environment. In the Prison Rape Elimination Act of 2003, the United States Congress found that:

> 2,100,146 persons were incarcerated in the United States at the end of 2001 . . . [E]xperts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison. Many inmates have suffered repeated assaults. Under this estimate, nearly 200,000 inmates now incarcerated have

---

[4] Saunders is an unreported panel decision of this Court and, pursuant to Section 414(a) of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

10

been or will be the victims of prison rape. The total number of inmates who have been sexually assaulted in the past 20 years likely exceeds 1,000,000.

42 U.S.C. § 15601(1)-(2). Given the foreseeable threat posed by sexual assault inside a prison's walls, the Department must maintain the discretion, within the bounds of the Constitution and any relevant statute, to prescribe sexual offender treatment when it deems necessary, and this Court must follow the counsel of the United States Supreme Court and "exercise restraint in supervising the minutiae of prison life." McKune v. Lile, 536 U.S. 24, 37 (2002).

Even if Jennings is correct and the Department lacked discretion to prescribe sexual offender treatment to inmates not convicted of a sexual offense, Jennings' argument ignores the fact that he was convicted of a sexual crime four months after he was convicted of Corruption of Minors, and was, in fact, a convicted sexual offender incarcerated for Sexual Assault and Indecent Assault at the time he was prescribed sexual offender treatment. While Jennings may have been sentenced to consecutive sentences for two distinct crimes, his sentences were *automatically aggregated to form a single sentence* pursuant to Section 9757 of the Sentencing Code[5] so that he was incarcerated for both crimes at the time he was prescribed sexual offender treatment. Forbes v. Dep't of Corr., 931 A.2d 88, 92 (Pa. Cmwlth.

---

[5] 42 Pa. C.S. § 9757. Section 9757 provides:

Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum sentence shall not exceed one-half of the maximum sentence imposed.

Id.

11

2007), aff'd, 946 A.2d 103 (2008). It is the policy of the Department to conduct an assessment of all inmates incarcerated for a sexual offense,[6] and Jennings has no clear right to not be evaluated for mental health or sexual offender treatment. We see no basis for Jennings' argument that the timing of prescribed treatments must correspond with the order in which an offender is serving consecutive, aggregated, sentences.

Because the Department, in furtherance of its purpose to provide a safe environment for inmates, maintains the discretion to prescribe treatment based on the results of an assessment, Jennings' allegation that the Department prescribed sexual offender treatment while Jennings was serving his sentence for Corruption of Minors is of no moment. We see no error in the Department exercising its discretion to prescribe to Jennings sexual offender treatment, and we sustain the Department's PO to Count 1 of the Petition.

## B. Parole

Jennings argues that the Board should not have considered his failure to participate in the sexual offender treatment program as a prerequisite for parole because his Corruption of Minors conviction was not sexual in nature. According to Jennings, but for his non-participation with the sexual offender program, he

---

[6] We may take judicial notice of the Department's policies which appear on its website. Hill v. Dep't of Corr., 64 A.3d 1159, 1165 n.3 (Pa. Cmwlth. 2013). Section 11 of the Department's Access to Mental Health Care Procedures Manual states that "Permanent facilities are responsible for identifying, tracking and assessing all sexual offenders received." Department Policy 13.8.1, Section 11(B)(2)(a). To that end, facilities are required to assess all offenders "currently incarcerated for a sex offense" within two months of arrival at the facility. Id., Section 11(B)(4)(a). The assessment procedure "shall include, but not be limited to, a case file review . . . ." Id., Section 11(B)(4)(b).

would have been eligible for parole when he reached the minimum date for his Corruption of Minors charge on October 13, 2003. (Petition ¶ 29.)

Mandamus, a rare and extraordinary writ in all its applications, is further limited in parole matters. We explained in <u>Weaver v. Pennsylvania Board of Probation and Parole</u>, 688 A.2d 766, 769-70 (Pa. Cmwlth. 1997) that

> [t]he options for a prisoner seeking review of the Board's failure to grant parole are very limited due to the nature of parole itself. . . . The Board's decision to grant or deny parole is not a decision in the ordinary sense, because, when released, a parolee is continuing to serve his or her sentence. Parole is nothing more than a possibility, and, when granted, *it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy* shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law abiding citizen in society. Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole. In other words, in Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his or her maximum term.

<u>Id.</u> (citations omitted) (emphasis added).

Because parole is a matter of grace given to the discretion of the Board, mandamus rarely lies in parole matters. <u>Id.</u> at 776. "The only relief that [an inmate] can obtain through mandamus is for the proper procedures be followed and the proper law be applied by the Board in ruling on [an] application for parole." <u>Id.</u> at 777. In such a case, mandamus will lie if a petitioner could show that the Board's action was "based upon an erroneous conclusion that it had the discretion to deny parole for the reason given." <u>Id.</u>

Here, the Board denied Jennings parole in 2006 for, *inter alia*, his "unacceptable compliance with prescribed institutional programs." (Petition, Ex. C.) The Board further determined that future parole reviews would consider

whether Jennings successfully completed a treatment program for sexual offenders and his prescriptive plan. (Id.) As stated above, the Department acted within its discretion to prescribe Jennings sexual offender treatment. The question now is whether the Board had the discretion to deny Jennings parole based on Jennings' decision to not participate in the sexual offender treatment program.

In Wilson v. Pennsylvania Board of Probation and Parole, 942 A.2d 270, 272 (Pa. Cmwlth. 2008), we addressed an inmate's petition for a writ of mandamus related to prescribed sexual offender treatment. The petitioner in that case was convicted of a drug charge, while a related charge of corruption of minors with a sexual component was withdrawn. Id. The petitioner was denied parole for failure to comply with a prescriptive plan that included sexual offender treatment. The petitioner argued that his Fifth Amendment Right to self-incrimination was violated by the Board when it required him to participate in the sexual offender program as a prerequisite for his parole because the sexual offender treatment program requires an admission of guilt. Id. We held that the petitioner failed to state a mandamus claim under the Fifth Amendment because the sexual offender treatment program furthers a legitimate penological objective, and that any adverse effects of choosing to not participate in the program, including the denial of parole, are not atypical in relation to the ordinary incidents of prison life. Id. at 273 (citing McKune, 536 U.S. at 26). Critical to the case at bar, we found no constitutional concern in the fact that the petitioner was not convicted of a crime of a sexual nature because "the 'official version' of his crime" showed that it was sexual in nature. Id. at 273 n.3. We further held the petitioner did not state a claim under the Due Process Clauses of the United States or Pennsylvania Constitutions

14

because "[a]n inmate has no liberty interest in . . . not being labeled a sex offender, or in not being required to participate in sex offender programming. Id. at 273.

Because we concluded in Wilson that inmates, including those whose *crime of conviction* does not have a sexual component,[7] have no clear right to not have the Board consider participation in prescribed sexual offender programming as a prerequisite of parole, we must conclude here that the Board acted within its discretion by denying Jennings parole from his sentence for Corruption of Minors based on Jennings' failure to comply with prescribed programs. We, therefore, sustain the Board's demurrer to Count 2 of the Petition.

---

[7] We distinguish between an inmate's *crime of conviction* and the conduct underlying the offense. The Department and the Board are entitled to look at the totality of the circumstances associated with the offense, not just the section of the Crimes Code for which he was convicted, in determining a prescriptive plan and parole eligibility. In Wilson, the Board looked at evidence showing that at the time of petitioner's arrest for his drug offense he was "naked, wearing a condom, and trying to initiate a sexual relationship with a 13-year old girl." Wilson, 942 A.2d at 273 n.3. Here, like in Wilson, the Board's decision to consider Jennings' participation in the sexual offender treatment program as a prerequisite for parole from his Corruption of Minors sentence is supported by Jennings' criminal file. Attached to the Petition for Review is a Probable Cause statement detailing the conduct that led to his arrest and conviction for Corruption of Minors. (Petition, Ex. B.) According to that document, Jennings and another man purchased alcohol for two underage females, one age 15 and one age 17. (Id.) The men took the underage females to the house both men shared and made a video recording of the men and the victims drinking together. (Id.) The other man took the video camera into a bedroom and recorded himself engaging in various sexual acts with the 15 year old victim. (Id.) The video recording shows Jennings walking into the room and laughing after the sex acts ceased. (Id.) Thus, even though Jennings "was neither charged with, nor convicted of any sex related offenses," (Id.), the evidence does show that the conduct underlying Jennings' Corruption of Minors conviction was sexual in nature.

15

For the foregoing reasons, the Department's PO and the Board's second PO are sustained.[8]  The Petition is, hereby, dismissed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] Due to our disposition, the Board's first PO is dismissed as moot.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Martin Jennings, II, : 
                 Petitioner : 
                             : 
                             : 
               v. : No. 522 M.D. 2015
                             : 
Pennsylvania Department of : 
Corrections, Pennsylvania Board of : 
Probation and Parole, : 
                Respondents : 

## O R D E R

**NOW**, November 30, 2016, the preliminary objection in the nature of a demurrer of the Department of Corrections and the second preliminary objection in the nature of a demurrer of the Board of Probation and Parole (Board) in the above-captioned matter are, hereby, sustained. The Amended Complaint filed by Joseph Martin Jennings, II, is dismissed with prejudice. The Board's first preliminary objection in the nature of a demurrer is dismissed as moot.

_____

**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Martin Jennings, II,         :
                                   : No. 522 M.D. 2015
                   Petitioner    : Submitted: June 17, 2016
                                   :
              v.                    :
                                   :
Pennsylvania Department of      :
Corrections, Pennsylvania Board of :
Probation and Parole,           :
                                   :
              Respondents   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

CONCURRING OPINION
BY SENIOR JUDGE FRIEDMAN            FILED: November 30, 2016



      I agree with the majority that the preliminary objections filed by the Department and Board should be sustained because Jennings has failed to establish a clear right to relief.[1] However, I do not agree with the majority that the Department

---

[1] Jennings seeks a writ ordering the Department to "correct his program[m]ing requirements which would make him eligible for parole consideration in 2006 and to properly calculate his credit for incarceration and maximum sentences." (Pet., Count I.) Jennings also seeks a writ ordering the Board to "correct his records and . . . to properly calculate his credit for incarceration and maximum sentences." (*Id.*, Count 2.) Jennings maintains that he was improperly ordered to participate in a sex offender treatment program for his Corruption of Minors conviction and, thereafter, improperly denied parole for his failure to participate. Jennings admits, however, that he was denied parole in 2006 for numerous reasons, not just his failure to participate in sex offender program treatment. (*Id.* ¶ 22; Ex. C.) Thus, Jennings has failed to show he would have been paroled absent the requirement of sex offender program treatment and, thus, has failed to establish a clear right to relief.

can prescribe sexual offender treatment while an inmate is serving a non-sexual offense. I also disagree with the majority's determination that the conduct underlying Jennings' Corruption of Minors conviction, which consisted of walking into a bedroom and laughing, was sexual in nature. Therefore, I concur in the result only.

There is no dispute that Jennings provided alcohol to a minor and pled *nolo contendere* to the charge of Corruption of Minors. There is also no dispute that Jennings "was neither charged with, nor convicted of any sex related offenses" in connection with the Corruption of Minors charge. (Pet., Ex. B.)

In accordance with section 9718.1(a) of the Sentencing Code, 42 Pa. C.S. §9718.1(a) a person "shall attend and participate in . . . counseling or therapy designed for incarcerated sex offenders if the person is incarcerated . . . for any of the following provisions." Corruption of Minors is listed as an offense requiring sexual offender treatment only "if the offense involved sexual contact with the victim." 42 Pa. C.S. §9718.1(a)(3). Because Jennings did not have sexual contact with a minor, the imposition of participation in sex offender programming is not mandated by section 9718.1(a) of the Sentencing Code.

The majority, nonetheless concludes that "the Department and the Board may still, within its discretion, prescribe sexual offender treatment based on 'a diagnostic evaluation and risk and needs assessment.'" (Maj. Op. at 10 (citation omitted).) The majority then cites to section 11 of the Department's Access to Mental Health Care Procedures Manual, which provides that "Permanent facilities are responsible for . . . assessing all sexual offenders received." Facilities are required to

assess all offenders *"currently incarcerated for a sex offense"* within two months of their arrival to the facility. (Emphasis added.)

In this case, Jennings was not "currently incarcerated for a sex offense."[2] Jennings was only serving his sentence for Corruption of Minors, which did not include a sexual component, when the Department imposed sexual offender programming and then subsequently refused to parole him in 2006 because, *inter alia*, he refused to participate in sex offender programming. Thus, I disagree with the majority's statement that Jennings "was *incarcerated* for both crimes." (Maj. Op. at 11 (emphasis added).) If sentences are consecutive, as they were here, only one sentence can be served at a time.

Further, the majority's reliance on *Wilson v. Pennsylvania Board of Probation and Parole*, 942 A.2d 270 (Pa. Cmwlth. 2008), is misplaced. In that case, Wilson, who was convicted of a drug charge, was denied parole because he failed to participate in a prescribed sexual offender treatment program. *Id.* at 272. This court concluded that the Board's requirement that Wilson participate in the sexual offender programming as a prerequisite to parole did not implicate constitutional concerns. We concluded that although Wilson was not convicted of a sexual crime, "the

---

[2] On September 26, 2003, Jennings was sentenced to 12 months' to 5 years' incarceration under Inmate Number EN1581 for the *nolo contendre* plea to the Corruption of Minors charge. (Pet. ¶ 14.) On January 26, 2004, Jennings was convicted of Sexual Assault and Indecent Assault and assigned a new Inmate Number FRO460. (*Id.* ¶¶16, 17.) On January 29, 2004, Jennings was returned to custody to serve his Corruption of Minors sentence. (*Id.* ¶ 17.) On April 8, 2004, Jennings received a sentence of 5 to 10 years' incarceration for the Sexual Assault conviction and a consecutive sentence of 1 to 2 years' incarceration for the Indecent Assault conviction. (*Id.* ¶ 18.) Those sentences were to run *consecutive* to Jennings' Corruption of Minors sentence. (*Id.* ¶ 18; Ex. G.)

'official version' of his crime" showed that it was sexual in nature. *Id.* at 273 n.3. Specifically, at the time of Wilson's arrest for the drug offense, Wilson was "naked, wearing a condom, and trying to initiate a sexual relationship with a 13-year-old girl." *Id*.

Here, the majority relies on the Probable Cause statement for Jennings' arrest to conclude that his Corruption of Minors conviction had a sexual component. I cannot agree. According to the Probable Cause statement, Jennings and another man purchased alcohol for two underage females, ages 15 and 17. (Pet., Ex. B.) The men took the females to a house that the men shared and made a video recording of everyone drinking together. (*Id.*) *The other man* took the video camera into a bedroom *and recorded himself engaging in sex acts* with the 15 year old victim. (*Id.*) *After* the sex acts ceased, *the video recording shows Jennings walking into the bedroom and laughing*. (*Id.*) Although the conduct underlying the other male's conviction was sexual in nature, Jennings' conduct was not. There is nothing in the record to indicate that Jennings intended to or engaged in sexual actions. I cannot agree with the majority's conclusion that "the evidence does show that the conduct underlying Jennings' Corruption of Minors conviction was sexual in nature." (Maj. Op. at 15, n.6.)

Accordingly, I concur in the result only.

_____
ROCHELLE S. FRIEDMAN, Senior Judge